Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| José M. Pérez Marrero y Teresa Rivera Díaz<br><br>Parte Recurrente<br><br>v.<br><br>Departamento de la Vivienda<br><br>Parte Recurrida | TA2025RA00119 | *Revisión Administrativa Procedente del Departamento de la Vivienda*<br><br>Sobre: Revisión Administrativa PR-R3-03403<br><br>Caso núm.: AR-23-00106 |
|---|---|---|

Panel integrado por su presidente, el Juez Monge Gómez, la Jueza Prats Palerm y el Juez Robles Adorno.[1]

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de octubre de 2025.

El 29 de julio de 2025, el señor José M. Pérez Marrero y la señora Teresa Rivera Díaz (en conjunto, parte recurrente) comparece ante nos mediante la presentación de un recurso de *Solicitud de Revisión Administrativa* en la que solicitó que revoquemos la *Resolución final y Orden* emitida y notificada el 27 de junio de 2025 por el Departamento de la Vivienda (parte recurrida).[2]

En el aludido dictamen, el Departamento de la Vivienda resolvió que el suelo en donde se encontraba ubicada la residencia de la parte recurrente no estaba en las condiciones necesarias e idóneas para sostener una reconstrucción. Por tanto, procedía reubicar a la parte recurrente en otra residencia.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución del Juez Rivera Colón.
[2] Apéndice del Recurso de Solicitud de Revisión Administrativa, Anejo 2.

## I.

El caso de epígrafe tiene su origen cuando el 26 de julio de 2021, tras evaluar la solicitud presentada por la parte recurrente, el Departamento de Vivienda emitió una misiva titulada *Programa CDBG-DR Programa de Reparación, Reconstrucción o Reubicación Determinación de Elegibilidad* en la que le notificó a la parte recurrente que era elegible para recibir asistencia conforme al Programa R3.[3] Con ello, iba a asignar una cuantía de dinero para la reconstrucción de la propiedad de la parte recurrente.

Tras varios trámites administrativos, el 17 de mayo de 2022, Tetra Tech y Alliance for the Recovery of Puerto Rico (Alliance), compañías encargadas de evaluar las propiedades que iban a ser reparadas mediante los fondos del Programa R3, remitieron un reporte titulado *Home Repair, Reconstruction, or relocation program technical feasibility analysis report* en el que auscultaron las reparaciones que se debían llevar a cabo en la propiedad de la parte recurrente.[4] En el citado reporte, las compañías indicaron que no era viable reparar la residencia ante las condiciones inciertas del suelo, particularmente por la erosión que sufría el terreno. De igual forma, la propiedad tenía varias grietas y daños estructurales. Por tanto, ambas compañías recomendaron que la propiedad fuera reconstruida. Sin embargo, razonó que previo a la reconstrucción se debía llevar a cabo un estudio geotécnico para validar la topografía, pendiente y condiciones del suelo.

El 15 de julio de 2022, la parte recurrida le envió una carta, del *Programa CDBG-DR Programa de Reparación, Reconstrucción o Reubicación Notificación de Adjudicación-Reconstrucción*, a la parte recurrente en la que le informó que era elegible para los fondos destinados a la asistencia para reconstruir su hogar.[5]

---

[3] *Íd.*, Anejo 2.
[4] *Íd.*, Anejo 7.
[5] *Íd.*, Anejo 5.

El 27 de julio de 2022, la parte recurrente firmó el *Consentimiento y acuerdo de subvención de dueño de hogar para el programa de reparación, reconstrucción o reubicación (Programa R3)* en el que se comprometió a cumplir con las Guías del Programa R3 y condiciones contractuales, en aras de obtener los fondos para la reconstrucción de su hogar.[6]

El 5 de agosto de 2022, Geotechnical Engineering Services, PSC presentó ante el Departamento de la Vivienda un *Reporte Geotécnico* en el que informó su análisis sobre el estado del suelo en donde estaba la casa de la parte recurrente. [7] Ello, en aras de evaluar si el suelo era apto para reconstruir una propiedad.

El 9 de noviembre de 2022, las compañías Alliance y Caribe Techno redactaron un informe, dirigido a la parte recurrida, titulado *Home Repair, Reconstruction, or relocation program technical feasibility analysis report* en el que determinaron que no era posible la reconstrucción de la propiedad de la parte recurrente.[8] Ambas compañías decretaron que, en base al *Reporte Geotécnico,* para que el suelo en donde está ubicada la propiedad sea viable, debería realizarse una excavación alrededor de la propiedad. Luego, el terreno debía ser rellenado con materiales adecuados para que el suelo alcanzara la capacidad mínima para sostener la propiedad. Ante este cuadro, ambas compañías estimaron que el costo en construcción excedería los fondos destinados para la reconstrucción del hogar. Por ende, las compañías recomendaron que la parte recurrente fuese reubicada a otro lugar para vivir.

El 14 de marzo de 2023, la parte recurrida le cursó una misiva, *Programa CDBG-DR Programa de Reparación, Reconstrucción o Reubicación Notificación de Adjudicación-Reconstrucción a Reubicación,* a la parte recurrente en la que le notificó que un

---

[6] *Íd.*, Anejo 4.
[7] *Íd.*, Anejo 29.
[8] *Íd.*, Anejo 7.

estudio geotécnico demostró que el suelo en el que se encuentra su propiedad no era adecuado para soportar una reconstrucción.[9] Asimismo, determinó que las condiciones en que se encontraba el suelo impedían que se llevara a cabo la construcción con el dinero aprobado para la misma. Consecuentemente, el Departamento de la Vivienda indicó que, a tenor con las Guías del Programa R3, le asignó una cuantía de $200,000.00 para reubicarse.

Ante ello, el 30 de marzo de 2023, la parte recurrente instó una *Solicitud de revisión de decisión administrativa* ante la División Legal del Programa CDBG-DR/MIT de Vivienda en la que argumentó que ha sufrido daños y perjuicios a consecuencia de las violaciones por parte del Departamento de la Vivienda en los estatutos contractuales y administrativos.[10] Alegó que, recibió tratamiento médico por las angustias ocasionadas ante el proceso de lograr obtener una vivienda. Adujo que, de haber tenido conocimiento sobre la posibilidad de ser reubicado, no hubiese suscrito el *Consentimiento de Acuerdo de Subvención* con el Programa del Departamento de Vivienda. Así pues, sostuvo que el reubicarlos conllevaría un desplazamiento. Por tanto, solicitó que se dejara sin efecto el Cambio de Adjudicación para Reubicación.

Iniciado los procedimientos administrativos, el 28 de septiembre de 2023, un ingeniero de Tetra Tech realizó una investigación de la vivienda en la que preparó un informe acerca de la calidad del suelo de la residencia principal de la parte recurrente.[11] En dicho informe, fue reiterado el grave estado en el que se encontraba el terreno y que este no era viable para sostener una propiedad.

Tras diversos trámites administrativos, el 28 de agosto de 2024, el Departamento de la Vivienda celebró una vista sobre los

---

[9] *Íd.*, Anejo 5.
[10] *Íd.*, Anejo 3.
[11] *Íd.*, Anejo 27, pág. 1679.

estados de los procedimientos en la que la parte recurrida ordenó al Programa CDBG-DR/MIT de Vivienda que le hiciera entrega a la parte recurrente sobre el *Informe Geotécnico* realizado en la vivienda de la parte recurrente.[12] Así las cosas, durante la vista la parte recurrida entregó el mencionado informe.

Tiempo después, el 19 de febrero de 2025, la parte recurrida radicó una *Moción informativa y que se dé por sometido el caso* en la que alegó que le ha provisto la información solicitada por la parte recurrente.[13] No obstante, la parte recurrente no le ha hecho entrega de la información que le ha solicitado acerca de los alegados arreglos al terreno que esta realizó. Ante ello, adujo que la parte recurrente tuvo oportunidad para presentar documentación adicional de su caso y, por tanto, ameritaba que el organismo administrativo emita su determinación.

El 4 de marzo de 2025, la parte recurrente radicó una *Moción en cumplimiento de orden; solicitud de que el caso se dé por sometido con el contenido del expediente.*[14] En dicha moción, solicitó que el caso se diera sometido por el expediente.

En atención a las mociones citadas, el 27 de junio de 2025, la parte recurrida emitió una *Resolución Final y Orden[15]* en la que acogió el Informe preparado por el Oficial Examinador y formuló las siguientes determinaciones de hechos:

1. El 26 de julio de 2021, la solicitud asistencia bajo el Programa R3 fue preliminarmente determinada como elegible para recibir asistencia.
2. El 15 de julio de 2022, el Programa emitió una Notificación de Adjudicación-Reconstrucción. En dicha notificación informaron a la parte Promovente que era elegible y cualificada para recibir asistencia para reconstrucción de su hogar,
3. El 27 de julio de 2022, la parte Promovente firmó su Consentimiento de Acuerdo de Subvención con el Programa y el Programa le notificó que la cuantía adjudicada sería de $199,450.00. Dicho documento

---

[12] *Íd.*, Anejo 2, pág. 1831.
[13] *Íd.*, Anejo 30, págs. 1821-1822.
[14] *Íd.*, Anejo 30, págs. 1825-1826.
[15] *Íd.*, Anejo 2, págs. 1828-1842.

establecía que el beneficiario entendía y reconocía que las Guías del Programa R3 se incluían y se hacían formar parte integral del acuerdo.

4. El 5 de agosto de 2022, Geotechnical Engineering Services, PSC para Caribe Tecno, preparó un estudio geotécnico del terreno de la parte Promovente.

5. El 9 de noviembre de 2022, se realizó un Reporte de Análisis de Factibilidad. En el mismo se determinó que el sitio es un área susceptible a deslizamientos de tierra.

6. El 14 de marzo de 2023, el Programa emitió una Notificación de Cambio de Adjudicación-Reconstrucción a Reubicación. En dicha notificación informaron a la parte Promovente que, luego de comenzar el proceso de reconstrucción, habían encontrado que existan condiciones extraordinarias que no permitían que la vivienda se reconstruyera efectivamente. La cuantía notificada de la asistencia adjudicada para reubicación era de $200,000.00.

7. El estudio geotécnico mostró que el suelo existente en la propiedad de la parte Promovente no es adecuado ni estable para tolerar una futura reconstrucción encima de él. Para hacer el sitio adecuado para la reconstrucción, el estudio recomendó realizar una excavación de 6 pies en y alrededor de la ubicación de la reconstrucción de la casa modelo. Luego, este material de excavación debe ser reemplazado por un material adecuado que pueda alcanzar la capacidad mínima de carga del suelo (2,000 psi). El estudio recomendó la contratación de equipo técnico, al igual que un ingeniero especialista en suelos. También recomendó que los desagües y drenajes en el terreno se revirtieran hacía la calle.

8. El Programa R3 determinó que la reconstrucción era inviable debido a las condiciones del suelo. El costo total de reemplazo de suelo superaría los límites del Programa, por lo cual la acción recomendada era una reubicación.

9. El 30 de marzo de 2023, el Promovente presentó una Solicitud de Revisión Administrativa ante la División Legal del Programa CDBG-DR/MIT del Departamento de la Vivienda.

10. La Inspección Especial realizada el 28 de septiembre de 2023 por el Inspector Especial para Tetra Tech, reiteró la gravedad de la condición del terreno que hace inviable la reconstrucción en ese lote de terreno.

11. E1 26 de junio de 2024, la Arquitecta Yadira Adorno Pomales en su Reporte de Inspección Especial, concluyó que, a pesar de que la casa modelo del Programa encaja en el lote de terreno de la parte Promovente, dicho tereno demostraba condiciones extremas relacionadas a la estabilidad del mismo, por lo cual la reconstrucción en el terreno era inviable.

12. La parte Promovente no presentó prueba para derrotar los hallazgos y las recomendaciones del estudio geotécnico preparado por Geotechnical Engineering Services, PSC. y el Reporte de Inspección Especial de la Arquitecta Adorno.

13. Surge del expediente administrativo fotografías de la propiedad de la parte Promovente donde se nota terreno erosionado en la parte posterior de la residencia.[16]

En lo pertinente, la parte recurrida planteó que el Programa R3 le ofrece a las personas la oportunidad de obtener una vivienda mediante los programas de rehabilitación o reubicación. Así pues, como parte del programa, adujo que se lleva a cabo un estudio de viabilidad para evaluar la razonabilidad de los costos de una construcción de obras extraordinarias. No obstante, señaló que la determinación preliminar que la agencia emite, previo a llevarse a cabo el estudio de viabilidad, puede cambiar. Ello pues, sostuvo que el estudio de viabilidad acredita y describe de forma detallada el estado de la casa y una recomendación certera sobre si procede reconstruir o reubicar al solicitante.

Conforme con esos principios, el Departamento de la Vivienda declaró No Ha Lugar la *Solicitud de Revisión Administrativa* presentada por la parte recurrente. Enfatizó que, el reporte geotécnico demostró que el suelo no estaba en condiciones para soportar una reconstrucción. Por tanto, la parte recurrida resolvió que la inestabilidad del terreno imposibilitaba la reconstrucción y, por tanto, procedía reubicar a la parte recurrente en otro lugar en aras de proveerle una vivienda estable. Consecuentemente, la parte recurrida ordenó el archivo, con perjuicio, del caso.

Inconforme, el 29 de julio de 2025, la parte recurrente instó una *Solicitud de Revisión Administrativa* en la que formuló el siguiente señalamiento de error:

Erró el DV al violar los términos del Acuerdo en los cambios que se estableció una labor de Reparación, la cual fue cambiada a Demolición y Reconstrucción para luego ser cambiada, una vez más, a una de Reubicación. Esto, sin tomar en consideración, y mediando negligencia, el Estudio Geotécnico el cual fue sometido al DV casi un año antes de la firma del Acuerdo y sin advertir a los Recurrentes antes o al momento de la firma sobre la posibilidad de Reubicación. Existe negligencia del DV por no incluir, considerar y ni proveer copia a los Recurrentes del Informe Geotécnico. Peor aún, dicho Informe Geotécnico y su actualización, no

---

[16] *Íd.*, Anejo 2, págs.1831-1833.

establece concretamente la imposibilidad de reconstrucción y si una preocupación de presupuesto la cual debió ser informada al momento de la firma del Acuerdo.

En atención a nuestra *Resolución,* el 28 de agosto de 2025, el Departamento de la Vivienda radicó un *Alegato en oposición a recurso de revisión judicial.*

Con el beneficio de la comparecencia de las partes, procederemos a resolver el caso ante nuestra consideración.

**II.**

**A.**

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. *Otero* v. *Toyota,* 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Otero* v. *Toyota, supra,* pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. *Rebollo* v. *Yiyi Motors,* 161 DPR 69, 78 (2004). Las determinaciones de hecho de las agencias tienen a su favor una "presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas." *Henríquez v. Consejo Educación Superior,* 120 DPR 194, 210 (1987). Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota de P.R. Corp.,* 163 DPR 716, 727-728 (2005); *Domingo v. Caguas Expressway Motors,* 148 DPR 387, 397 (1999). Las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial que no obra en el expediente administrativo. *Vázquez v. Consejo de Titulares,* 216 DPR

___ (2025), 2025 TSPR 56. Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surge del expediente. *Otero* v. *Toyota, supra,* pág. 728. El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728. La parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto de que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitan S.E. v. A.R.P.E.,* 138 DPR 200, 213 (1995) citando a *Hilton Hotels v. Junta de Salario Mínimo,* 74 DPR 670, 686 (1983).

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe

convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra*, pág. 728.

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez v. Consejo de Titulares, supra.* La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares, supra.* Ello, como mecanismo interpretativo del poder judicial. *Íd.* Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota,* supra, pág. 729. Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1)

cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* v. *Toyota*, 163 DPR 716, 730 (2005). Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Por otro lado, las determinaciones de derecho, el tribunal tiene amplia autonomía para revisarlas en todos sus aspectos. *Rebollo* v. *Yiyi Motors, supra*, pág. 77.

**B.**

El Departamento de la Vivienda es el organismo responsable de elaborar y ejecutar la política pública de la vivienda y el desarrollo comunal en Puerto Rico. Art. 3 de la *Ley Orgánica del Departamento de la Vivienda*, Ley Núm. 97 de 10 de junio de 1972 (Ley Núm. 97-1972), según enmendada, 3 LPRA sec. 441b. De igual forma, el Departamento de la Vivienda ostenta la facultad de establecer las normas directivas programáticas para alcanzar y administrar el desarrollo de todos los programas y actividades en el campo de la vivienda de interés social. *Íd.* En esa línea, entre los poderes y facultades del Secretario del Departamento de la Vivienda se encuentra:

> [...]

> (f) Celebrar los convenios o acuerdos que sean necesarios y convenientes a los fines de alcanzar los objetivos del Departamento y sus programas, con organismos del gobierno de los Estados Unidos de América, y con los gobiernos estatales, con otros departamentos, agencias, municipios, instrumentalidades o corporaciones públicas del Estado Libre Asociado y con instituciones particulares; queda asimismo facultado para aceptar y recibir cualesquiera donaciones, propiedades o fondos por concepto de asignaciones, anticipos, de préstamos, o cualquier otro tipo de transferencia de otros departamentos, agencias, municipios, instrumentalidades o corporaciones públicas del Estado Libre Asociado u organismos [del] gobierno de los

Estados Unidos de América, y aceptar y recibir cualquier otro tipo de ayuda o beneficio cuando éstos provengan de dichos organismos gubernamentales o instituciones de fines no pecuniarios particulares.
*supra* sec. 441.

[...]

Ahora bien, como parte de las iniciativas de los programas de vivienda, el Gobierno de Estados Unidos de América aprobó varios fondos para el Programa Community Development Block Grant-Disaster Relief (CDBG-DR) para que los secretarios de Vivienda de los estados y territorios pudieran concederle a las personas solicitantes la cuantía necesaria para obtener una vivienda asequible. 85 F.R 5844, 5846, Part IV, 9 de febrero de 2018. No obstante, el Secretario de la Vivienda tiene potestad para conceder una cuantía de dinero a una persona solicitante a tenor con los requisitos que este disponga. 85 F.R 5844, 5846, Part IV, 9 de febrero de 2018. Así pues, el Secretario de la Vivienda tiene que esbozar ciertos requisitos y procesos para que las personas cualifiquen para dicho programa. 85 F.R 5844, 5846, Part IV, 9 de febrero de 2018.

Con ello, como parte de los esfuerzos en asistir a las personas afectadas por los Huracanes Irma, María, los terremotos de 2019 al 2020 y la Tormenta Tropical Isaías, se creó el Programa R3 en el que se utiliza los fondos CDGB-DR. Sección 2 de las Guías del Programa CDBG-DR del Programa de Reparación, Reconstrucción o Reubicación (Programa R3) 12 de diciembre de 2024. El Programa R3 ofrece asistencia de reparación, reconstrucción o reubicación a los solicitantes que resulten elegibles, según el alcance de los daños y la localización del hogar. Sección 3 de las Guías del Programa R3 12 de diciembre de 2024. En caso de que un solicitante sea elegible para una reubicación, recibirá un Vale de Reubicación para seleccionar una propiedad existente o en construcción. *Íd.* Cada propiedad preliminarmente elegible se le realizará una evaluación

de daños. Sección 10 de las Guías del Programa R3 12 de diciembre de 2024. Durante la inspección, el asesor de daños examinará la propiedad y al finalizar la inspección llevará a cabo un informe exhaustivo de los daños y condiciones observadas. *Íd.* Con dicho informe, el inspector decretará una evaluación en la que estimará el costo de las reparaciones. *Íd.* Luego, el Programa R3 le enviará al solicitante una Notificación de Pre-adjudicación en la que le informará los pasos a seguir y la cantidad que el Programa R3 le ofrece. Sección 14.9 de las Guías del Programa R3 12 de diciembre de 2024.

Posteriormente, el desarrollo del Programa R3 continúa analizando la viabilidad de los costos de construcción, reconstrucción o reubicación mediante estudios de viabilidad. Con ello, el estudio de viabilidad considera factores que podrían impactar el costo y la viabilidad del proyecto. Sección 16.5 de las Guías del Programa R3 12 de diciembre de 2024. Consta en la citada sección que,

> Este proceso de análisis de viabilidad asegura que el tipo de adjudicación otorgada inicialmente sea, en efecto, el tipo de asistencia más efectiva, lo cual, en ocasiones, puede diferir de la determinación preliminar. Si el análisis de rentabilidad revela que la reconstrucción es el método más efectivo, se asigna una adjudicación de reconstrucción. Si el análisis de rentabilidad revela que la reparación es el curso de acción más efectivo, entonces se asignará una adjudicación de reparación.

Conforme con ese principio, en caso de que una vivienda no se pueda reconstruir por restricciones legales, ingeniería o ambientales (permisos, condiciones extraordinarias del lugar) se le provee al solicitante opciones de reubicación. Sección 14.2 de las Guías del Programa R3 12 de diciembre de 2024. El Programa R3 puede conceder como cuantía máxima la cantidad de $200,000.00 para reubicación y $215,000.00 en concepto de construcción y reconstrucción. Sección 14.9 de las Guías del Programa R3 12 de diciembre de 2024. Cuando un participante quiera retirarse del

Programa de R3 este tiene setenta y dos (72) horas para retirarse de este. Sección 20 de las Guías del Programa R3 12 de diciembre de 2024. En adición, el solicitante debe cumplir con otros requisitos reglamentarios para no beneficiarse del Programa R3. *Íd.*

**III.**

En el caso de autos, la parte recurrente argumentó que erró el Departamento de la Vivienda tras no advertirle acerca de la posibilidad de que podía ser reubicada. Asimismo, alegó que dicha advertencia no constaba en el *Consentimiento y acuerdo de subvención de dueño de hogar para el programa de reparación, reconstrucción o reubicación (Programa R3)* que firmó. Además, alegó que la parte recurrida no le proveyó el *Informe Geotécnico.* También adujo que del informe no se desprende que el suelo no sostenía una reconstrucción.

Sabido es que debemos brindarle deferencia a las determinaciones de hechos que esbozan las agencias administrativas. En reiteradas ocasiones, este Tribunal ha resuelto que no intervendremos en las determinaciones de hecho de una agencia, salvo que la determinación administrativa no está basada en evidencia sustancial; el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional. De lo contrario, debemos abstenernos en modificar las determinaciones de hechos que formule la agencia toda vez que el foro administrativo evaluó la prueba desfilada ante su consideración.

Como corolario de lo anterior, el Departamento de la Vivienda es el organismo administrativo encargado de promover la vivienda digna y accesible. Con ello, ostenta la facultad y el deber de promover e incentivar iniciativas, con la asistencia de fondos

estatales y federales, para que las personas puedan obtener un hogar. Así pues, la parte recurrida creó el Programa R3 en aras de asistir a las personas que sufrieron daños en sus hogares a raíz de los huracanes Irma, María, los terremotos de los años 2019 al 2020 y la Tormenta Tropical Isaías. A esos fines, una persona que sea elegible para obtener asistencia del Programa R3, debe cumplir con las Guías del Programa R3. Además, consta en las citadas guías que el ente administrativo realiza una determinación preliminar cuando un inspector evalúa la propiedad de la persona que es elegible. Sin embargo, surge de las Guías del Programa R3 que, posteriormente se ejecuta un estudio de viabilidad en el que se analiza si la determinación preliminar es idónea o debe ser alterada. Empero, cuando una determinación preliminar deba ser alterada, se le informa al solicitante con una cuantía de dinero para que pueda reubicarse. Cabe señalar que, las Guías del Programa R3 esbozan y advierten al solicitante la posibilidad de que la determinación preliminar pueda ser cambiada tras el estudio de viabilidad.

Tras un análisis detenido del expediente, resolvemos que el Departamento de la Vivienda no erró en resolver que procedía reubicar a la parte recurrente. Ello, puesto que el suelo en que estaba localizada la propiedad de la parte recurrente no tenía las condiciones aptas para una reconstrucción.

Es forzoso concluir que, la parte recurrente al firmar el *Consentimiento y acuerdo de subvención de dueño de hogar para el programa de reparación, reconstrucción o reubicación (Programa R3)* tuvo constancia en que una cláusula contractual disponía que la parte recurrente debía cumplir con las Guías del Programa R3. Al respecto, la citada guía dispone que el Departamento de la Vivienda puede cambiar su determinación preliminar una vez efectúe un estudio de viabilidad sobre la propiedad que vaya a beneficiarse de los fondos del Programa R3. Resulta evidente que, la parte

recurrente debió estudiar las Guías del Programa R3 para que tuviera conocimiento acerca de la posibilidad de que la determinación preliminar pudiera ser alterada tras el estudio de viabilidad. Ciertamente, en el caso ante nos, el estudio de viabilidad brindó mayor certeza sobre el estado del terreno de la propiedad y la factibilidad de construir sobre el suelo en cuestión. Así, el Departamento de la Vivienda pudo determinar que no era viable la reconstrucción y, convenía reubicar a la parte recurrente con los fondos destinados para ello. Como vemos, la parte recurrida ostenta la facultad para cambiar su determinación preliminar luego de haber realizado un estudio de viabilidad.

Por otro lado, surge del expediente ante nos que, durante las vistas administrativas, el Departamento de la Vivienda le entregó a la parte recurrente el *Informe Geotécnico*. Ahora bien, de lo anterior se desprende que, evidentemente el suelo en donde se encontraba ubicada la propiedad de la parte recurrente no iba a tolerar una reconstrucción. Además, en esta ocasión debemos brindarle deferencia a la pericia del Departamento de la Vivienda en resolver que el terreno no sostenía una reconstrucción de una propiedad y, por tanto, procedía reubicar a la parte recurrente. Atisbamos que, la parte recurrente no trajo a nuestra atención evidencia que nos persuadiera determinar que en efecto procede reconstruir la propiedad y no reubicar a la parte recurrente.

A tenor con lo anterior, resolvemos que el Departamento de la Vivienda no erró en resolver que procede reubicar a la parte recurrente. Ello, pues el organismo administrativo cumplió con las Guías del Programa R3 y dichas guías formaban parte del acuerdo suscrito entre las partes.

**IV.**

Por los fundamentos que anteceden, se confirma la *Resolución* recurrida.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones